UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 21-20595-CR-MARTINEZ

UNITED STATES OF AMERICA,

v.

BRYAN HUGGER,

    Defendant.

_____/

## ORDER ON MOTION TO SUPPRESS

**THIS CAUSE** came before the Court on Defendant Bryan Hugger's Motion to Suppress. (ECF No. 18). After holding an evidentiary hearing on July 11, 2022, and having carefully considered the briefing, the evidence presented, the record, and the applicable law, the Court denies the Motion to Suppress.

**I.    BACKGROUND**

On May 8, 2021, Officer Delgado was dispatched to the Aventura Mall in response to a report that shots had been fired there. When Officer Delgado arrived at the mall, an off-duty deputy approached and advised Officer Delgado what he had witnessed from the second floor of the mall. The deputy reported that he had observed a group of approximately ten people arguing down on the first floor of the mall. While the deputy was looking away, he heard shots fire. When the deputy returned his gaze to the first floor to see where the shots came from, he saw a Black male wearing a blue mask, gray sweater, and dark pants. The deputy had observed this male amongst the group that was arguing before the shots were fired.

Officer Delgado observed the male who fit the deputy's description exiting the mall. At approximately 3:50 p.m., police officers drew their guns and pointed them at the male, later

1

identified as Defendant Bryan Hugger, as he exited the mall. The officers grabbed Defendant, threw him to the ground, and handcuffed him while he was on his stomach. The police maneuver caused Defendant to drop his iPhone 11 (14.4 operating system), and shopping bags, which the officers later retrieved. During the arrest, officers discovered an empty holster on the Defendant's person, but no firearm.

The officers placed Defendant in the backseat of a police cruiser, where he remained for about thirty minutes. Then, an officer drove Defendant to the Aventura Police Department. Defendant was placed in a locked holding cell for approximately five hours. Officers retained control of Defendant's personal property. Despite Defendant's requests, he was not permitted to call his mother.

Detective Kenneth Sealy had also been dispatched to the mall after the report of shots fired. After assisting with traffic and speaking with a few individuals at the scene, he went to a command center set up in the mall. There, he attended a debriefing session on the shooting with Detectives Mundy and Marquis also present. Detective Sealy was assigned the task of obtaining any search warrants that would be needed to further the investigation. As part of his assignment, he conducted a walkthrough of the crime scene and watched security camera footage at the mall. He did not know that the Defendant was already in custody at that time.

Around 6:30 p.m., Detective Sealy left the mall and returned to the police station to begin working on the search warrant applications. Importantly, Detective Sealy began working on a search warrant application for Defendant's iPhone between approximately 7:30 p.m. and 8:30 p.m. When he was working on this application, Detective Sealy had not had any contact with Defendant. Detective Sealy submitted the application for review by an assistant state's attorney between 9:30 p.m. and 9:45 p.m., and the application was then submitted to a judge for review at 10:02 p.m.

At approximately 10:10 p.m., Defendant was moved into an interrogation room where Detectives Marquis and Mundy began interviewing Defendant about the shooting without first reading him his rights under *Miranda*. Detective Sealy learned about this interrogation around 10:30 p.m. At 10:45 p.m., a judge signed a search warrant for Defendant's iPhone.

At around 11:00 p.m., Detectives Marquis and Mundy asked Defendant for his iPhone passcode. About two minutes later, Defendant told Detectives Marquis and Mundy his iPhone passcode. Detective Sealy used the passcode to unlock the iPhone and to image the device with an application called Cellebrite. Although Detective Sealy used the passcode to unlock Defendant's device, technicians were onsite and prepared to unlock Defendant's device without the passcode. In fact, those technicians obtained access to another suspect's iPhone that was a newer model and with a newer operating system than Defendant's iPhone.

When Detective Sealy began examining the contents of Defendant's iPhone, he discovered photographs, call logs, and text messages that he recognized to be evidence of wire and identity fraud based on his training and experience. Later, Detective Sealy obtained a second search warrant of Defendant's iPhone to investigate the purported fraud he discovered. The evidence from the initial and subsequent search resulted in the charges brought against Defendant before this Court for conspiracy to commit wire fraud, aggravated identity theft, and use of an unauthorized access device.

## II.     DISCUSSION

### A.     Inevitable Discovery Doctrine

For purposes of this Order, the Court will assume without deciding that Defendant's statements made in the absence of *Miranda* warnings occurred during a custodial interrogation, were not voluntary, and violated his Fourth Amendment rights under the Constitution. Generally,

"[t]he exclusionary rule bars admission of evidence resulting from a Fourth Amendment violation[.]" *United States v. Watkins*, 10 F.4th 1179, 1180 (11th Cir. 2021) (en banc) (hereinafter "*Watkins I*"). But there are several exceptions to the exclusionary rule. For example, even if evidence is unlawfully obtained, the evidence may be admissible under the inevitable discovery exception if the evidence would have been discovered without the "unconstitutional source." *Utah v. Strieff*, 579 U.S. 232, 236 (2016). The purpose of the exception is to "put[] the police in the same, not a worse, position tha[n] they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443 (1984)

The Government must make two showings for the exception to apply. *See United States v. Watkins*, 13 F.4th 1202, 1211 (11th Cir. 2021) (hereinafter "*Watkins II*"). First, the Government must "show[] by a preponderance of the evidence that if there had been no constitutional violation, the evidence in question would have been discovered by lawful means." *Id.* (citing *Nix*, 467 U.S. at 444). Second, the Government must show "that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Id.* (citing *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015), *overruled by Watkins I on other grounds*). The "requirement that the alternative means of discovery be actively underway before the constitutional violation occurs is limited to cases where the alternative means of discovery is a search warrant." *Watkins II*, 13 F.4th at 1215. If the "alternative means of discovery" is not a search warrant, then the government can establish the "active pursuit" requirement by showing "'that the police would have discovered the evidence by virtue of ordinary investigations of evidence or leads already in their possession.'" *Id.* (quoting *Johnson*, 777 F.3d at 1274).

Here, the alternative means of discovering the allegedly incriminating information on Defendant's iPhone was through a search warrant. Detective Sealy was actively pursuing a search

4

warrant of Defendant's iPhone by, at the very latest, 8:30 p.m. Defendant's interrogation did not begin until around 10:10 p.m., more than an hour later. Detective Sealy did not learn any information from Detectives Mundy or Marquis, or from the Defendant himself, prior to submitting the warrant application for Defendant's iPhone. Based on these facts, Detective Sealy was actively pursuing a lawful means to obtain the information on Defendant's iPhone before law enforcement obtained the same information unlawfully. In addition, a preponderance of the evidence supports the conclusion that law enforcement would have discovered the allegedly incriminating evidence by lawful means based on the presence of the onsite technicians who had recently broken into a newer and more sophisticated iPhone than Defendant's. Even if Defendant's Fourth Amendment rights were violated, the inevitable discovery exception to the exclusionary rule applies.

### B. The Search Warrant was not Unconstitutionally Overbroad

Defendant contends that the incriminating evidence should be excluded anyways because the search warrant was unconstitutionally overbroad. The Fourth Amendment of the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. It also provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* The purpose of the particularity requirement is "to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). While "'general, exploratory rummaging in a person's belongings'" is prohibited, "elaborate specificity is unnecessary." *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). "The standard 'is one of practical accuracy rather than technical nicety.'" *Id.* at 755 (citation omitted). Stated another way,

the particularity requirement should be applied with a "practical margin of flexibility[.]" *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982). The warrant must "enable[] the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* at 1348 (citation omitted).

Defendant takes issue with two aspects of the search warrant. He first contends that the warrant is unconstitutional because it did not limit the search to relevant dates. He also argues that the warrant did not adequately limit the search to items connected with the stated crimes.

After reviewing the warrant, the Court finds it sufficiently detailed and particularized to the crimes under investigation. To begin, the warrant clearly sets forth the Florida "Statute(s) Being Violated," including the title of each of the offenses being investigated. Under the section of the warrant titled "Property Sought," the affiant states he seeks to search Defendant's iPhone for property, described in number paragraphs, "as it is evidence of violations of the above-named statutes." And almost all the numbered paragraphs describe the property sought in reference to either the statutes being violated or to the events described in the probable cause section of the affidavit for the search warrant.

In an evolving investigation like the one surrounding Defendant's arrest, the warrant obtained was sufficiently tailored so that the searcher could reasonably ascertain and identify the things authorized to be seized. Even though the warrant did not provide a time period for which items could be searched, the subject-matter limitation of the warrant adequately particularized the warrant by constitutional standards. *See United States v. Harvey*, No. 15-cr-00053, 2015 U.S. Dist. LEXIS 174276, *43–47 (N.D. Ga. Nov. 30, 2015) (rejecting argument that warrants were not particularized because they failed to provide any time period for which items could be searched); *United States v. Hardwick*, No. 18-cr-398, 2019 U.S. Dist. LEXIS 225525, *36–38 (N.D. Ga. June

7, 2019) (same) (collecting cases).  This case is unlike *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017), upon which Defendant heavily relies, because there, Facebook was required "to 'disclose' to the government virtually every type of data that could be located in a Facebook account[.]" *Id.* at 966–67.  Here, the disclosure was limited to the crimes being investigated.  Applying a "practical margin of flexibility," the warrant issued satisfies the Constitution's particularity requirement.  *See Signature Pharm., Inc. v. Wright*, 438 F. App'x 741, 746 (11th Cir. 2011) ("Because the descriptions in the warrants refer to items that are evidence of a violation of certain statutes relating to the sale of controlled substances, the items were described with sufficient particularity to . . . identify the things to be seized."); *United States v. Badiki*, No. 17-cr-342, 2019 U.S. Dist. LEXIS 15723, at *4 (N.D. Ga. Jan. 31, 2019) (denying motion to suppress evidence obtained from warrant that "had no temporal limitation and allowed the Government to obtain all records from the emails accounts" because "the warrant did limit the Government to seizing records that evidenced the crimes under investigation").

### III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Suppress, (ECF No. 18), is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, 12th day of July, 2022.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Magistrate Judge Becerra
All counsel of record